UNITED STATES, Appellee

v

RAYMOND H. THOMPSON, Corporal, U. S. Army, Appellant

12 USCMA 438, 31 CMR 24

No. 14,814

July 21, 1961

First Lieutenant Talbot J. Nicholas argued the cause for Appellant, Accused. With him on the brief was Lieutenant Colonel W. H. Blackmarr.

First Lieutenant Francis J. Larkin argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel James G. McConaughy and First Lieutenant Barry L. Kroll.

## Opinion

ROBERT E. QUINN, Chief Judge:

The accused was convicted of four specifications alleging he forged the signature of a fellow soldier to an agreement to pay $5.00 for a coupon or "chit" book issued by the Noncommissioned Officers Mess at Fort Benning, Georgia. On this appeal he challenges the sufficiency of the evidence to support the findings of guilty and attacks certain instructions by the law officer.

Former Corporal Watson was one of the accused's "buddies." In July 1960, he gave the accused his card to the noncommissioned officers club and told him "he could use it." The card en-

titled the holder to admission to the club; and it could also be used for the purchase of chit books on credit. Cards were valid for only one month; and the amount of credit allowed a member during the month depended upon his grade. A corporal's credit limit was $30.00, but the amount could be increased by the club manager. There is some conflict in the evidence as to whether Watson's authorization contemplated use by the accused only for admission to the club, or whether it also permitted the pledge of Watson's credit in the purchase of chit books. According to the accused, it was "common practice" to borrow a card from the owner and pledge his credit, and he understood Watson's authorization to mean he could use the card to pledge Watson's credit. Watson expected to be discharged from the service sometime in August. Early that month, he gave the accused $20.00 to pay his credit charges at the club. He did not ask the accused to obtain a new card for him. However, when the accused paid Watson's debt, he also obtained a new membership card. He signed his own name to the membership register acknowledging the issuance of the card to him. Later, he filled in the blanks on the card with Watson's name, rank and serial number. During the following week, he obtained four chit books by signing Watson's name and presenting the "Watson" club card. The purchases were charged to Watson.

At trial, the accused admitted he obtained the chit books on the "Watson" card and signature, but he stoutly maintained he had no intention to defraud Watson or the club. "If I would have had any intent to defraud," he said, "I would have . . . [used] a fictitious name and not a friend of mine's name." He knew that by means of the membership register, chit purchases "could be traced back to . . . [him] in a matter of minutes." Testimony by club employees confirmed the ease of checking the card number against the membership register and establishing the identity of the person to whom the card was issued.

. On August 25, Watson started to clear his accounts on the post, preliminary to his discharge. He went to the club and was informed its records showed a $20.00 liability in his name. While he denied the obligation, he "laughed about it." He said he "knew who done it," and he would "straighten . . . out" the matter. He returned to the battery area and talked to the accused about the account. The accused told him he had signed for the chits and that he would "take care of the matter." Watson made no complaint. A few days later the accused paid him the $20.00, and Watson cleared the account at the club. In the meantime, however, the battery commander, who had formerly been a military police officer, "overheard a conversation" about the incident between Watson and another member of the battery. He investigated the matter and then "preferred the charges."

The first issue need not detain us long. One of the essential elements of forgery is the intent to defraud someone. Manual for Courts-Martial, United States, 1951, paragraph 102; United States v Strand, 6 USCMA 297, 20 CMR 13; United States v Taylor, 9 USCMA 596, 26 CMR 376. The accused contends this element is not established beyond a reasonable doubt by the evidence. However, as his own brief indicates, the contention turns entirely upon whether the accused "could [fairly] infer permission" to obtain a card for Watson and pledge Watson's credit for the chit books. The evidence provides some support for this inference, but the court-martial was not bound to draw it. Rather, it could reasonably conclude from other evidence that the accused determined to insert Watson's name on the card as a scheme either to impose liability upon Watson or to obtain credit for himself, which he would not otherwise be able to obtain, on a forged credential. See United States v Taylor, supra; Welham v Director of Public Prosecutions, 1 All E R 805, 2 W L R 669 (1960). Since there is substantial evidence to support the court-martial's finding of an intent to defraud, we cannot set aside the conviction even though we might have reached a contrary finding were we the

triers of the facts. United States v Steward, 1 USCMA 648, 651, 5 CMR 76.

Moving to the accused's attack on the instructions, the law officer read separately the allegations of each specification relating to the written promise to pay for the chit book, and referred to the requirements that the writing have apparent legal effect and that the accused entertained an intent to defraud. There were also instructions on some general principles of law, such as determining the intent to defraud from the surrounding circumstances. However, there was no instruction on the defense contention that the accused believed he had authority to sign Watson's name for the chits and that he intended to pay Watson for the charges to his account. Furthermore, the law officer specifically instructed the court that, "[n]either the fact of repayment, nor an intent at the time of negotiation to make later a repayment, constitutes a defense to the charge of forgery."

Instructions correct in the abstract may be inadequate or misleading in the context of the specific issues in the case. United States v Weems, 3 USCMA 469, 13 CMR 25. They must, therefore, be specifically and precisely related to the issues marked out by the allegations and the evidence. See United States v Farris, 9 USCMA 499, 26 CMR 279; United States v Burgess, 8 USCMA 163, 23 CMR 387; United States v Williams, 1 USCMA 186, 2 CMR 92. The instructions here are materially deficient in this regard.

Proof of forgery does not, of course, require a showing of actual loss by the person intended to be defrauded. United States v Taylor, supra. Generally, therefore, it can properly be said that the intention to repay at a later date or to save harmless from loss is not a defense to the act of forgery. See 2 Wharton, Criminal Law and Procedure, section 623 (1957). Uncrit-

ical application of that rule to the evidence in this case, however, is very misleading. As noted earlier, the accused testified he believed he was authorized by Watson to obtain chit books on Watson's credit. The Government concedes, in its able brief, that if the accused "had authority to sign" Watson's name for the chit books he could not be guilty of forgery.

If the accused was in fact authorized by Watson, he certainly would not be defrauding him by signing his name for the books with the intention of paying Watson for the credit obtained. Certainly, too, the accused would not be deceiving the club. If the accused had authority to sign Watson's name, the credit would be actually extended to Watson, not the accused, and the amount would be within the limits prescribed by the club regulations for individuals of Watson's grade. Consequently, an honest belief by the accused that he had the requisite authority could negative the existence of the intent to defraud. See United States v McCluskey, 6 USCMA 545, 554, 555, 20 CMR 261. Yet, nothing of the effect of the accused's belief that he had such authority was mentioned in the law officer's instructions. The omission was, itself, a defect. Combined with the direction that the intention to reimburse Watson could not be considered by the court-martial, at the very least, impaired the accused's defense. An intent to repay or save harmless from loss is a material circumstance bearing upon the honesty of the accused's belief. We conclude, therefore, that the instructions were seriously deficient in apprising the court of the accused's defense.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judge FERGUSON concurs in the result.