UNITED STATES, Appellee

v

PAUL O. PELLETIER, Jr., Airman Third Class, U. S. Air Force, Appellant

15 USCMA 654, 36 CMR 152

*Lieutenant Colonel Andrew S. Horton* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Major Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened at Langley Air Force Base, Virginia, the accused was found guilty of falsely altering a Government check, in violation of Uniform Code of Military Justice, Article 123, 10 USC § 923. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for one year, and reduction. The convening authority approved the sentence. The board of review, one member. concurring in part and dissenting in part, affirmed. The Judge Advocate General, United States Air Force, thereupon certified the case to this Court upon the following question:

"WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT MATERIAL PREJUDICE DID NOT RESULT FROM THE INSTRUCTIONS GIVEN ON 'HONEST LACK OF INTENT TO DEFRAUD' ?"

A brief résumé of the evidence is necessary to place the instructional issue in its proper perspective.

On December 15, 1964, accused received his normal pay in the form of a United States Treasury check in the amount of $38.19. On December 16, 1964, he cashed the check at the Langley Air Force Base Branch of the Citizens and Marine Bank. In return for its negotiation, he received the sum of $88.19, for the face amount thereof had been altered in two places to make the digit "3" appear as an "8." Because of the alteration, payment was ultimately refused the bank on the check.

Interviewed by an agent of the Office of Special Investigations after proper warning under Code, supra, Article 31, 10 USC § 831, the accused initially denied altering the check. Later, however, he admitted pencilling changes in the instrument by closing the "3's" to make them resemble "8's." He declared he had no intention of cashing the check in the new amount and, in fact, attempted to erase the pencil marks. When he thereafter negotiated the instrument on the same day, he did not count the money which he received from the bank teller. Upon later discovering the fact she had paid him $88.19, he intended to return the excess to the bank but did not have the opportunity to do so prior to his departure on leave a few days later. On his return from leave, he was immediately contacted by the interviewing agent and, again, was not able to pay the bank. On March 19, 1965, accused, in fact, repaid the bank in the amount of $50.00. When the bank later discovered that the altered check would not be honored by the Government in any amount, he paid it an additional $38.19.

Considerable evidence of the accused's good character and reputation for honesty and trustworthiness was introduced. Appearing as a witness in his own behalf, Pelletier conceded alteration of the check and its ultimate negotiation. He denied, however, that he had any intent to defraud anyone. He declared that, following receipt of the check, he went to his room, "sat down for a minute and for some reason which I do not know right now, I picked up a pencil and began to write on the face."

He then realized "I was doing wrong and just erased it the best I could." His "doodling on the check" was witnessed by Airman McElligott and Airman Mercado, who "told me I could get in a lot of trouble." Accused replied, " 'I know it,'—I erased it then."[1]

Upon discovering he had been paid $88.19 instead of the true amount of the check, he intended to return it to the bank, but "didn't get a chance" during the three days which elapsed before he commenced his leave. His only explanation for his failure to go to the bank was that he "was too scared or ashamed of what happened."

Airmen McElligott and Mercado corroborated accused's testimony to the extent that they had observed his "scribbling like on top of his check"; that he was told "he could get himself in a lot of trouble that way"; that Pelletier replied that he knew he could "and then he turned his pencil around and erased it." Accused also told them he had "no intention of going through with it."

With the evidence in this posture, the law officer properly advised the court of the elements of the charged forgery, including the necessity for finding an intent to defraud. He went on, however, to add the following:

"The defense has introduced evidence to show that, at the time of the alleged offense of forgery by altering the amount of payment as alleged, the accused did not have an intent to defraud when he altered the amount of payment. With respect to this evidence, the court is advised that if the accused did not have such intent *and if this lack of intent was honest,* he cannot be found guilty of forgery by altering the amount of payment, as alleged.

"The burden is on the prosecution to establish the accused's guilt by legal and competent evidence beyond a reasonable doubt. Consequently, unless you are satisfied beyond a reasonable doubt that the accused did

intend to defraud by altering the check, as alleged, you must acquit the accused.

"*An honest lack of intent to defraud,* no matter how unreasonable, will exonerate the accused with respect to the offense of forgery by alteration. *In determining the issue of the honesty of the accused's alleged lack of intent to defraud, you should weigh and consider the inherent probability or improbability of the evidence relating thereto.* In this regard, you may consider the accused's age, education, experience, his demeanor on the stand, his actions as established by the evidence and his background." [Emphasis supplied.]

The Government argues the addition of the word "honest" to the instruction concerning lack of intent to defraud, while redundant and inartful, added nothing to the burden of the accused and, considered with the other instructions, could not have prejudiced him. It also urges trial defense counsel acquiesced in the advice's phraseology and, hence, cannot now complain. We reject both contentions.

First, we note the law officer correctly advised the court-martial of the elements of the offense charged, including the requisite intent to defraud. See Code, supra, Article 123; United States v Strand, 6 USCMA 297, 20 CMR 13; United States v Taylor, 9 USCMA 596, 26 CMR 376; United States v Thompson, 12 USCMA 438, 31 CMR 24. Subsequently, however, in giving the advice of which complaint is made, he also informed the court that the absence of an intent to defraud was not enough to acquit Pelletier, for he said such should result only "if the accused did not have such intent *and if this lack of intent was honest."* (Emphasis supplied.) Again, he emphasized that an *"honest* lack of intent to defraud" would exonerate the accused, and invited the court to determine such "honesty" by weighing and considering the inherent probability or improbability of the evidence relating thereto; the accused's age, education, experience, his demeanor on the stand, his actions, and his background. In short, the whole thrust of the instruction is that the

---

[1] The parties to the trial conceded below that the check in fact bore erasure marks.

failure to find an essential element of the offense was not enough to entitle the accused to an acquittal. In addition thereto, the court was required to conclude the nonexistence of such mental state on the accused's part was also honest.

True it is that the law officer, in instructing on the elements of the offense charged, required only an intent to defraud to be found and, indeed, in the very advice mentioned, on one occasion used that term without other qualification. Such, however, does not allow the conclusion the instructions as a whole were correct. At the most, he set out two mutually inconsistent standards by which the accused's guilt was to be measured. Under such circumstances, we have consistently refused to find the erroneous instruction cancelled out by a correct statement of the law elsewhere. United States v Noe, 7 USCMA 408, 22 CMR 198; United States v Rowan, 4 USCMA 430, 16 CMR 4.

We must confess our lack of understanding of the technical legal significance of the law officer's adding the qualification of honesty to the absence of an intent to defraud. The requirement of the law is simply for the court-martial to find the existence of that mental state beyond a reasonable doubt. Code, supra, Article 123; United States v Thompson, supra. If the accused does not possess the intent to defraud, he cannot be convicted of forgery. As in United States v Tucker, 14 USCMA 376, 34 CMR 156, no issue of honest ignorance or mistake was framed by the proof. The only question presented by the evidence and argued by the parties was whether the accused had the necessary intent. But we need not be concerned with the technical meaninglessness of requiring the court members to find the accused's lack of intent to be honest. What matters is the effect of such language upon the fact finders, who are not legal technicians and who are certainly presumed to attach significance to the requirements to find guilt as set forth by a law officer in his instructions on the law. Viewed from their standpoint, and quite aside from the possibility that the burden of

proof of lack of intent was unintentionally shifted to the accused, we deem the instruction had the direct effect of advising the court incorrectly as to the elements of the offense.

Thus, while the instruction was negative, it told the members that failure to establish the intent alone was not enough to find the accused not guilty. In addition, the lack of intent on his part must also be "honest"! As we have seen, such is not the law and the lack of intent alone requires the accused to be set free. United States v Strand; United States v Taylor; United States v Thompson; all supra. And as this advice set a totally improper standard by which the court was to measure accused's guilt of the offense charged, we cannot say he was not prejudiced thereby. Code, supra, Article 59, 10 USC § 859; United States v Tucker; United States v Rowan; both supra.

Nor are we, under the circumstances of this case, inclined to invoke the doctrine of waiver because of trial defense counsel's apparent acquiescence in the erroneous instruction. As was true in United States v Rowan, supra, "the instructional error completely confused the one fundamental standard by which the sole issue in the case was to be determined, [and] we feel constrained to review the error. Were we to do otherwise, a miscarriage of justice would be apparent." Id., at page 437.

The certified question is answered in the negative. The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

The principal opinion translates a meaningless word into reversible error.

The law officer explicitly advised the court-martial that it must find beyond a reasonable doubt that the accused actually entertained an intent to defraud. Nothing in any of his references to an "honest lack of intent to defraud" detracts from, or is inconsistent with, this iterated and reiterated

instruction. No court member could be persuaded by these remarks to conclude that the accused was guilty of the offense charged because he had a dishonest lack of an intent to defraud. That is just too remote and unlikely a possibility to be worthy of serious consideration. I, therefore, disagree with the majority's interpretation of the meaning of the law officer's comments and their alleged effect upon the court members.

But more than that, the accused's lawyers, individual counsel and appointed defense counsel, actively participated with the law officer in the formulation of the now challenged instructions. Individual defense counsel expressed his agreement with the final form of the instructions in these words: "That's fine"; and appointed defense counsel said they were "[e]xactly what we want." So there is more than *lack* of objection; there is affirmative agreement that the instructions were adequate. Under the circumstances, the accused cannot now complain that the alleged ambiguity or inaccuracy was prejudicial. See United States v Sweeney, 14 USCMA 599, 34 CMR 379; United States v Jones, 7 USCMA 623, 23 CMR 87.

I would affirm the decision of the board of review.