UNITED STATES, Appellee

v

LEWIS R. TRUMAN, Private, U. S. Army, Appellant

19 USCMA 504, 42 CMR 106

*Captain Robert A. Savill* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Charles W. Schiesser,* and *Captain Lee A. Rau.*

*Captain Larry S. Seuferer* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Captain William R. Steinmetz.*

## Opinion of the Court

DARDEN, Judge:

As a consequence of his activities on the nights of July 1 and 3, 1968, the appellant was convicted by a general court-martial on three counts of larceny. His sentence now consists of a bad-conduct discharge, total forfeitures, and one year's confinement at hard labor. Truman has successfully petitioned this Court to consider the following two instructional issues:

Whether the law officer's instructions on the voluntariness of appellant's confession were so confusingly structured and worded that they failed to provide the court-martial with meaningful legal guidelines.

Whether the law officer erred by failing to instruct the court-martial that the Government has the burden of proving appellant did not in any manner indicate he did not wish to be interrogated before his alleged confession could be found voluntary, as raised by appellant's testimony.

On July 8, 1968, authorities confronted the appellant regarding the two larcenies of July 3, 1968. On that day he was interrogated separately by Military Police Investigator Noffsinger and by his company commander, Captain Motley. To both he professed innocence, telling Noffsinger that he had been in San Francisco, California, on the night in question, and the Captain that he did not want to make a statement and that he had not been involved. In each instance Truman was advised of his Article 31 rights and his right to counsel.

Statements by others that conflicted with his assertions, however, plus information regarding the earlier larceny, resulted in Noffsinger's meeting with him twice the following day. Only one hour intervened between these meetings, but nevertheless the appellant was twice warned. Noffsinger said Truman acknowledged that he understood his rights and then rejected the assistance of counsel. When made aware of information then in Noffsinger's possession, the appellant became visibly shaken and asked to speak in private to his commanding officer, who was then present. Noffsinger left the room.

According to the Captain, Truman initiated this five or ten minute conversation by asking if he would receive a court-martial or "get a 212 out of the Army"[1] if he admitted the offenses. When the Captain replied that he would try to get the appellant out of the Army on a "212" whether the larcenies were admitted or not, Truman declared, "I might as well go on and admit it." Noffsinger, accompanied by First Sergeant Enriquez, was then called into the room. A warning of Truman's rights followed. The appellant then confessed.

At trial Truman continued to assert his innocence, contending that he confessed after being promised a "212" discharge by Captain Motley, and that this was the sole reason for his confession. Such a discharge had first been mentioned on July 8, 1968, when,

---

[1] Army Regulation 635–212.

according to the appellant, the Captain promised, "If you confess I'll put you in for a 212." He asked for the private meeting, following the earlier confrontation that same day, to make certain that the promise would be kept. The appellant further related that he had been sent to the Military Police station at Fort Ord, California, on July 7, 1968, that he saw Noffsinger, and that he did not reply when asked to make a statement. The next day he was called by the Captain, who gave him an Article 31 warning and told him that he had a right to counsel. Nothing was said, however, regarding a lawyer, "civilian counsel," or the furnishing of counsel free of charge. The record further shows that the Captain had talked about an unsuitability discharge for Truman and had taken overt steps to effect this result.

The defense moved at trial to suppress the introduction of the appellant's confessions. These motions, which were grounded on involuntariness, inadequate warning, and violation of Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), by the continued questioning of Truman, were rejected. The introduction of his oral statements followed. The law officer then instructed:

"The court is advised that the issue of voluntariness has been raised by the evidence with respect to the pre-trial oral statement of the accused. With regard to the contention of counsel for both sides concerning this issue, you must consider all the relevant facts and circumstances; including, but not limited to, evidence presented by the accused, with regard to the statement. While the accused was suspected of an offense, and a person subject to the Uniform Code of Military Justice, and that before this statement was obtained from the accused, he was not advised;

"First: Of the nature of the offense of which he was then suspected;

"Second: He was not advised of his right to remain silent;

"Third: That any statement he made may be used as evidence against him in a criminal trial; and

"Fourth: That he had the right to consult with counsel, and to have counsel present with him during the questioning;

"Fifth: That he could retain civilian counsel at his own expense, or, if he wanted military counsel, he would be appointed for him at no expense to the accused.

"This warning is an absolute prerequisite to questioning. No amount of evidence that an accused may have been apprised or made aware of his rights, will suffice in its stead.

"The law further requires that after being so advised, and before making a statement in the absence of counsel, the accused must first freely, knowingly, intelligently, and specifically waive his right to remain silent, and his right to consult with counsel, and to have counsel present with him during the questioning. A statement obtained from the accused is involuntary, and may not be used against him, unless the Government has proved beyond a reasonable doubt that the accused was warned, and all the warnings given to the accused prior to questioning. Also, if you find any of those warnings were not given to the accused, beyond a reasonable doubt, then you must disregard his statement in its entirety.

"Now, if you find from the evidence before this court . . . from the testimony, that the accused made his statement on the basis that he was going to get an administrative discharge, that is an unlawful inducement, and if the court finds that, they must disregard the statement made by the accused to Noffsinger, and to Captain Motley, and not consider it for any purpose whatsoever. As I say, the burden to establish the fact that the statement was voluntary on the part of the accused, and that he waived his rights, and that he knew what he was doing before that . . . but, and I want to reiterate again, that if he made that statement

to Captain Motley and Noffsinger on the basis that he was going to get an administrative discharge, that is unlawful inducement, and you must disregard the statement that he made, in other words, confessing to the larcenies, and not consider it for any purpose whatsoever."

Appellate defense counsel attack the instruction as being unintelligible, for providing the court-martial with an erroneous warning prerequisite as well as an erroneous burden of proof standard, and for failing to cover his request for counsel. They urge that it cannot be cured by subsequent instructions, citing United States v Waller, 11 USCMA 295, 29 CMR 111 (1960).

The instruction is obviously not a model of clarity, but syntactical nicety is not the standard of instructional adequacy. In United States v Smith, 8 USCMA 582, 584, 25 CMR 86 (1958), the Court said, "It is not the number or the position of the commas, semicolons, or periods that counts, but whether the instruction as a whole provides meaningful legal principles for the court-martial's consideration. United States v Noe, 7 USCMA 408, 22 CMR 198." If, when gathered together, the instruction states the law "properly and with sufficient clarity to be understood by the members of the court-martial, then they are not prejudicial even though one sentence may be technically incorrect." United States v Hatchett, 2 USCMA 482, 488, 9 CMR 112 (1953). Where there are mutually inconsistent standards the erroneous one eradicates the beneficial effect of the correct one, however, and utilization of the "instruction as a whole" doctrine becomes inappropriate. United States v Pelletier, 15 USCMA 654, 36 CMR 152 (1966); United States v Skonberg, 10 USCMA 57, 27 CMR 131 (1958).

In the case at bar a single sentence covering the Government's burden of proof is submerged by the accompanying misadvice. If the court found that essential warning elements were *not* given beyond a reasonable doubt then the statement was to be disregarded. Similarly, they were to disregard the appellant's statement only if they *affirmatively* found unlawful inducement. In each instance, the burden of proof was obviously and erroneously shifted to this appellant. United States v Odenweller, 13 USCMA 71, 32 CMR 71 (1962); United States v Traweek, 16 USCMA 50, 36 CMR 206 (1966). At best, two mutually inconsistent standards were contained in the law officer's advice. Even doubtful instructions must be resolved in a fashion favorable to the appellant. United States v McIntosh, 12 USCMA 474, 31 CMR 60 (1961); United States v Lombardi, 14 USCMA 466, 34 CMR 246 (1964). Later correct instructions do not remedy the defect in the absence of a clearly shown withdrawal of the first erroneous instructions. United States v Robinson, 15 USCMA 492, 35 CMR 464 (1965). We must reverse because of the denial of such a substantial right. United States v Williams, 1 USCMA 186, 2 CMR 92 (1952); United States v Pelletier, supra. Our action on the first assignment of error obviates consideration of the second assignment.

The decision of the Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

I am satisfied that the final instructions as to the voluntariness of the confession were understood by counsel and the court members to be controlling. This last statement was explicit and correct and left no doubt that the burden of proving the voluntariness of the confession was on the Government and that the finding of voluntariness had to be beyond a reasonable doubt.

As to the second issue, although the accused twice indicated to the Military Police investigator that he did not wish to make a statement, the record indicates that substantial additional evidence implicating the accused was ob-

**507**

tained subsequent to the second refusal, which made it entirely appropriate for the investigator to try again to interview the accused. In this regard, the situation is different from that in United States v. Attebury, 18 USCMA 531, 40 CMR 243 (1969), in which we held that repeated reliance by the accused upon his right to remain silent "made it incumbent upon the agent to desist in his attempts to get the accused to talk." *Id.*, page 532. The meeting with Captain Motley was initiated by the accused, and is not, therefore, part of the investigator's efforts to interrogate the accused. Captain Motley's version of his conversation with the accused differed materially from that of the accused. The conflict was submitted to the court members, with proper instruction as to the effect of the accused's version on the right of the court-martial to consider the confession.

I would affirm the decision of the United States Army Court of Military Review.