**UNITED STATES, Appellee,**

v.

**Private First Class Matthew CAULEY, SSN 316–66–0413, United States Army, Appellant.**

**SPCM 14370.**

U. S. Army Court of Military Review.

30 June 1980.

Captain Alan W. Schon, JAGC, argued the cause for the appellant. With him on

the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, and Major Lawrence D. Galehouse, JAGC.

Captain Kenneth H. Clevenger, JAGC, argued the cause for appellee. With him on the brief were Major Ted B. Borek, JAGC, and Major Douglas P. Franklin, JAGC.

Before RECTOR, CARNE and O'DONNELL, Appellate Military Judges.

## OPINION OF THE COURT

O'DONNELL, Judge:

At a contested trial, the appellant was convicted of six worthless check offenses in violation of Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a.[1] His sentence to a bad-conduct discharge, confinement at hard labor for four months, forfeiture of $279.00 per month for four months, and reduction to the lowest enlisted grade was approved by the convening authority.

To establish the requisite intent to defraud, the Government relied in part on the statutory presumption of intent raised by failure of the maker or drawer to redeem the checks within five days of receiving notice of dishonor.[2] This was attempted through the testimony of Peter Siegmund, manager of the American Express branch bank of Robinson Barracks, Stuttgart, Germany, where the checks were cashed. Herr Siegmund identified a letter addressed to the appellant's company commander seeking his assistance in effecting payment of ten dishonored checks by the appellant.[3] The letter also contained a notation indicating that a copy was for the appellant.

The defense objected to the introduction of the letter *inter alia* on the grounds that there was no showing that it had been mailed either to the addressee or to the appellant in the normal course of business. In response to questions by the judge, Herr Siegmund without elaborating stated that bad-check letters of this kind are maintained by the bank in the normal course of business and mailed, also in the normal course of business. He did not testify from his own knowledge that this particular letter was mailed to the appellant's commander or that a copy was sent to the appellant.[4] Neither the company commander nor the appellant testified. The judge received the letter as Prosecution Exhibit 9.

As a general rule, proof of the mailing of a letter properly stamped and addressed raises a presumption of receipt by the person to whom it was addressed. Proof of mailing may be shown by deposit of a letter in a mailbox or by delivery to a mail carrier or mail clerk. It may also be shown through evidence of a custom or usage of a business as to the mailing of letters. There is a split of authority as to what evidence is required with respect to office custom or practice. The minority rule is that proof of the custom of the business as to the mailing of letters is alone

1. The appellant was convicted of that portion of Article 123a which imposes criminal sanctions for anyone who, for the procurement of anything of value with intent to defraud, draws a check for the payment of money upon a bank knowing at the time that he does not or will not have sufficient funds in or credit with the bank for payment of the check upon presentment.

2. The making, drawing, uttering, or delivering by a maker or drawer of a check, draft or order, payment of which is refused by the drawee because of insufficient funds of the maker or drawer in the drawee's possession or control, is prima facie evidence of his intent to defraud or deceive and of his knowledge of insufficient funds in, or credit with, that bank or other depository, unless the maker or drawer pays the holder the amount due within five days after receiving notice, orally or in writing, that the check, draft, or order was not paid on presentment.
Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a.

3. The ten checks were listed as inclosures to the letter. The copy of the letter introduced at trial did not include the inclosures. Testimony, however, revealed that these checks included the six checks which are the subject of the charges in this case as well as four others drawn by the appellant.

4. In response to a question as to whether a copy of the letter had been sent to the appellant, Siegmund replied, "Yes, it's so indicated [on the letter]."

sufficient to warrant a presumption that a particular letter was mailed and received. The majority rule, on the other hand, requires a showing that the custom or practice was complied with in the particular case by testimony of a person who is responsible for such compliance. *See Leasing Associates, Inc. v. Slaughter & Sons, Inc.,* 450 F.2d 174 (8th Cir. 1971), and cases cited therein. *See also* cases collected in 25 A.L.R. 9 (1923) and 86 A.L.R. 541 (1933).

 It is clear from the facts in this case that the Government failed to establish that the appellant received notice of the dishonored checks in question. Under either the majority or the minority rule the evidence presented through the medium of Herr Siegmund was insufficient to show that the letter had been mailed to the appellant's commanding officer, much less that a copy had been sent to the appellant. As a bare minimum, even under the minority rule, the custom must be established by proof of its method of operation and not merely a conclusory statement of its existence. *Leasing Associates, Inc. v. Slaughter & Sons, Inc., supra.* Neither Herr Siegmund nor anyone else testified as to the precise practice in the bank with respect to the mailing of bad-check letters.

Accordingly, the Government may not rely on the statutory presumption of intent to defraud.[5] However, there is other evidence in the record bearing on the issue of fraudulent intent, such as the number and face value of checks written in a relatively brief period of time and the existence of other bad checks properly admitted for this limited purpose, to support the required fraudulent intent.

We have determined the remaining assigned errors adversely to the appellant.

The findings of guilty and the sentence are AFFIRMED.

Senior Judge CARNE concurs.

Chief Judge RECTOR concurs in the result.

---

5. The prosecution also introduced the complete banking file relating to the appellant. This file included a potpourri of documents relating to the appellant's banking difficulties to include copies of dishonored checks, copies of two letters addressed to him concerning checks not in issue in this case and a copy of a second letter addressed to the appellant's company commander with a notation of a copy to the appellant. To the extent the documents are relevant on the question of notice, they suffer from the same deficiencies as Prosecution Exhibit 9.

The military judge exacerbated the situation by instructing the court that in determining whether the appellant had an intent to defraud, they could consider, *inter alia*, "the fact that the accused was notified in writing from the bank, apparently by his commander, if you believe an inference to be drawn and receiving that evidence, and believe the accused did receive notice as testified to, and thereafter the accused did not make payment or restitution to the bank."