UNITED STATES, Appellee,

v.

Matthew CAULEY, Private First Class,
U.S. Army, Appellant.

No. 39,473/AR.
SPCM 14370.

U. S. Court of Military Appeals.

April 19, 1982.

For Appellant: *Captain Chuck R. Pardue*
(argued); *Colonel Edward S. Adamkewicz,*

*Jr., Lieutenant Colonel John F. Lymburner, Major Alan W. Schon, Major Robert D. Ganstine* (on brief); *Major Lawrence D. Galehouse, Major Robert C. Rhodes.*

For Appellee: *Captain Kenneth H. Clevenger* (argued); *Colonel R. R. Boller, Major Douglas P. Franklin, Major Ted B. Borek* (on brief); *Major Robert B. Williams, Major John T. Edwards.*

## Opinion of the Court

COOK, Judge:

Although it noted certain illaudable actions at accused's special court-martial trial, the United States Army Court of Military Review affirmed the findings of guilty and the sentence. We reverse the court's decision.

█ Convened in Nellingen, Federal Republic of Germany, the court-martial convicted accused of six specifications alleging issuance of a worthless check, in violation of Article 123(a), Uniform Code of Military Justice, 10 U.S.C. § 923(a). The checks were drawn on a bank in Indiana between December 28, 1978, and January 18, 1979. All were cashed by accused at an American Express (AMEX) facility at Robinson Barracks, in Stuttgart, and all were returned by the Indiana bank for insufficient funds.

Article 123(a) provides, in material part, that the maker's failure to pay the holder "within five days after receiving notice, orally or in writing, that . . . [a] check . . . was not paid on presentment" "because of insufficient funds" constitutes "prima facie evidence of . . . intent to defraud" in the making of the check. *See United States v. Margelony*, 14 U.S.C.M.A. 55, 33 C.M.R. 267 (1963). Prosecution exhibit 9, admitted over defense counsel's objection, is the AMEX file copy of a letter, dated February 21, 1979, from AMEX to accused's commanding officer. The subject of the letter is accused's "[i]ndebtedness" for "dishonoured checks." After the signature, identified as that of the manager of the AMEX facility, the following typed notations appear:

    encl.: photo copies of checks and correspondence

    cc.: Sp/4 Matthew Cauley

Convinced that the evidence "was insufficient to show that the letter had been mailed to the" commander and "that a copy had been sent to" accused, the Court of Military Review concluded "the Government . . . [could] not rely on the statutory presumption of intent to defraud." 9 M.J. 791, 793 (C.M.R.1980). Without expressly ruling the trial judge erred in admitting the letter into evidence because of the absence of proof of mailing, the court observed that the judge "exacerbated the situation" (*id.*, n. 5) by instructing the court members as follows (emphasis added):

As I advised before, proof of intent to defraud is an essential element with regard to the 123a offense. . . . [I]ntent may be proven by circumstantial evidence. . . . In this regard, you may consider all relevant facts and circumstances, including but not limited to the nature and duration of the check writing, the amount of the checks, closeness in proximity of the written checks, *the fact that the accused was notified in writing from the bank, apparently by his commander, if you believe an inference to be drawn and receiving that evidence, and believe the accused did receive notice as testified to, and thereafter the accused did not make payment or restitution to the bank.*

At the time of trial, paragraph 138*a*, Manual for Courts-Martial, United States, 1969 (Revised edition), provided that "[p]roof that a letter correctly addressed and properly stamped . . . was deposited in the mail . . . support[s] an inference that it was delivered to the addressee." *See Leasing Associates, Inc. v. Slaughter & Son, Inc.*, 450 F.2d 174 (8th Cir. 1971). In his closing argument, trial counsel maintained that "[a] copy of . . . [the letter of February 21] was sent to the accused" so that he "had notice by that date" of the nonpayment of the checks in issue. The last part of the trial judge's instruction seems to track trial counsel's statement in that it authorized the court members to find that "the accused did receive notice as testified

to." However, there is no factual basis for a finding that accused received the letter in the mail.

The manager did not testify that accused was sent a copy of the letter. His answer to trial counsel's question as to whether "a copy of that" letter had been "sent to" accused was: "Yes, it's so indicated on there." However, the letter does not mention accused's address, and no evidence was presented to show that the envelope in which the copy was placed was "correctly addressed" to the accused. Moreover, an entry in a document included in the AMEX file, which was also admitted into evidence, overwhelms the manager's implication that the "cc" on the letter attests to its mailing. The document is titled, "Summary of Collection Efforts." It contains two entries that deal with a letter to both the accused and his commanding officer. The first, dated February 12, refers to a letter "to Cauley and C.O."; the second letter, which is prosecution exhibit 9, reads, in material part, "letter (second) to C.O." The entry makes no mention of a copy of the letter to the accused. It follows that, as a matter of law, the trial judge erred in his representation to the court members that it could find from the evidence that accused directly "did receive notice" from AMEX of dishonor of the checks in issue. *See* para. 73*c*, Manual, *supra; United States v. Grandy*, 11 M.J. 270, 276–77 (C.M.A.1981).

The trial judge also erred in that part of his instruction which represented as "*fact* that the accused was notified in writing from the bank, apparently by his commander" of nonpayment of the checks. (Emphasis added). According to the evidence, AMEX wrote two letters to accused's commanding officer regarding checks that had been refused payment by the drawee bank because of insufficient funds. One is dated February 8, 1979; it is included in the AMEX file admitted in evidence as prosecution exhibit 10; the other is the February 21st letter, admitted as prosecution exhibit 9. The manager was questioned about the mailing of "letters, like Prosecution Exhibit 9." The examination by the military judge was as follows:

Q. Are these letters, like Prosecution Exhibit 9 for identification, sent out in the normal course of your banking business?

A. I didn't get that, sir?

Q. Are copies of letters like Prosecution Exhibit 9, is that done in the normal course of your banking business?

A. Did we write this and send this letter?

MJ: Yes.

A. Yes, we do this.

. . . . .

MJ: For the record, I am examining a duplicate original photo copy of a letter being an exact copy of Prosecution Exhibit 9 for identification.

Now this copy that you have there in front of you from your file folder, is that maintained by the bank in the normal course of the bank's business?

A. It is.

Q. Are you one of the custodians of the bank's documents?

A. Yes.

MJ: Your objection is overruled. Prosecution Exhibit 9 for identification is admitted into evidence as Prosecution Exhibit 9.

We assume, but do not decide, that the manager's testimony is sufficient to support a finding that both letters were mailed to, and received by, the commanding officer. Not an iota of evidence, directly or indirectly, indicates that the commander, or anyone else, apprised accused of the contents of those letters or passed on the letters themselves to accused.

■ As the flawed instruction indicates, the trial judge had previously instructed the court members regarding the effect of the failure to make good on a check after notice of its dishonor by the drawee bank. The earlier instructions were correct. However, when two instructions on a material issue are given, and one is correct but the other incorrect, the latter cannot be simply disregarded. *United States v. Pelletier*, 15 U.S. C.M.A. 654, 657, 36 C.M.R. 152, 155 (1966);

*United States v. Noe,* 7 U.S.C.M.A. 408, 22 C.M.R. 198 (1956). Consideration must be given to the effect of the erroneous instruction on the court members. Since the instruction here dealt with an element of the offense, we have no doubt it was considered by the court members in their deliberations on the findings. Absent the instruction as to the erroneous factual implications of prosecution exhibit 9, the court members may perhaps have found, as the Court of Military Review did, ample evidence of an intent to defraud. The record, however, demonstrates that the other evidence is not so dominant as to impel the conclusion that the court members put aside what the trial judge instructed them to consider. Resultantly, the findings of guilty cannot stand.

Our conclusion as to the prejudicial effect of the erroneous instruction does not necessarily require invalidation of all findings of guilty. Inherent in the offense charged is the lesser offense of dishonorable failure to maintain sufficient funds to pay a check on presentment. Para. 202A, Manual, *supra.* Recently we noted "that under some circumstances" an error requiring invalidation of findings of guilty of the issuance of a check with intent to defraud, in violation of Article 123(a), may still permit affirmance of findings of guilty of the lesser offense of dishonorable failure to maintain sufficient funds to pay, in violation of Article 134, UCMJ, 10 U.S.C. § 934. *United States v. McCullah,* 11 M.J. 234, 237 (C.M.A.1981). In *McCullah,* as here, the error pertained to notice of dishonor of the checks and the presumption of an intent to defraud from the failure to pay within five days of notice, as provided by Article 123(a). The Court perceived these factors to bear directly and significantly on both the intent to defraud required for conviction of an Article 123 offense and the dishonor in the failure to pay required for an Article 134 offense. It, therefore, concluded that the trial factfinder "might have entertained reasonable doubt even as to the Article 134 offense." *Id.* at 237. That circumstance convinced the Court that findings of guilty of the lesser included offense could not properly be affirmed. This case is indistinguishable from *McCullah.*

Accordingly, the decision of the United States Army Court of Military Review is reversed; the findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge EVERETT concurs.

FLETCHER, Judge (dissenting):

I dissent. Although I find the trial judge erred in his assessment of the evidence and a portion of his instructions with regard to it, I find no prejudice. My Brothers in their opinion mistake a single tree for the total forest. The single tree relied on is prosecution exhibit 9, a letter addressed to appellant's company commander with a notation of copy to appellant. This letter standing alone does not meet the requirements of paragraph 138*a,* Manual for Courts-Martial, United States, 1969 (Revised edition), and therefore, I agree with the majority that it provides no evidentiary basis for inferring appellant received actual notice of the dishonored checks. However, I do not believe that the statutory presumption of fraudulent intent need be relied on in this case or that the instruction of the trial judge was substantially prejudicial to appellant. Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a).

The successful prosecution of a charge under Article 123(a), UCMJ, 10 U.S.C. § 923(a), requires that the Government prove accused issued the worthless checks with an intent to defraud. *See* para. 202A, Manual, *supra.* One way the Government can meet this burden of proof, "*prima facie,*" is to show that accused did not pay the holder within five days of receiving notice that his check was not paid on presentment. *Id. See United States v. Margelony,* 14 U.S.C.M.A. 55, 33 C.M.R. 267 (1963). However, this is not the only way the Government might establish an intent to defraud. *See* para. 202A, Manual, *supra.* Circumstantial evidence that the accused intended to defraud when he wrote and delivered the

check is also admissible. *See* Department of the Army Pamphlet 27–9, *Military Judges' Guide,* §§ 4–95, 9–14 (May 19, 1969).

In my opinion the military judge correctly instructed the members in all particulars as to the elements necessary to prove a violation of Article 123a without relying on the statutory presumption. I further find prosecution exhibit 10, the total American Express File, provides compelling evidence that the appellant had the requisite intent. *See United States v. Gaiter,* 1 M.J. 54 (C.M. A.1975). The following is a list from this exhibit which shows the checks of appellant which were not honored on presentment:

| SPEC. NO. | CHECK NO. | AMOUNT | DATE |
|-----------|-----------|----------|----------------|
| 1 | 164 | $100.00 | 28 Dec. 78 |
| 2 | 167 | $150.00 | 2 Jan 79 |
| 3 | 168 | $200.00 | 4 Jan 78 [sic] |
| 4 | 175 | $150.00 | 8 Jan 79 |
| 5 | 176 | $200.00 | 9 Jan 79 |
| 6 | 180 | $200.00 | 18 Jan 79 |

I agree with the Court of Military Review that in view of the nature and duration of the check writing, the amounts of the checks, and their closeness in proximity, this issue was fairly and overwhelmingly resolved against appellant.