## UNITED STATES

v.

**Anthony V. ACOSTA, 565 96 8680, Lance Corporal (E–3) U. S. Marine Corps.**

**NCM 78 1403.**

U. S. Navy Court of Military Review.

Sentence Adjudged 15 Dec. 1977.

Decided 30 March 1979.

CAPT Allan H. Meltzer, USMCR, Appellate Defense Counsel.

LT Anne L. MacArthur, JAGC, USN, Appellate Government Counsel.

Before DUNBAR, Senior Judge, and GREGORY and GLADIS, JJ.

GREGORY, Judge:

Contrary to his pleas, appellant was found guilty of possession and use of marijuana. He assigns the following errors for our consideration:

## I

THE REGIMENTAL FIELD OFFICER OF THE DAY WAS DISQUALIFIED, *PER SE* FROM AUTHORIZING A SEARCH OF APPELLANT'S BARRACKS ROOM.

## II

THE SEARCH OF APPELLANT'S ROOM WAS NOT AUTHORIZED BY A NEUTRAL AND DETACHED MAGISTRATE.

## III

THE SEARCH OF APPELLANT'S ROOM WAS UNLAWFUL, SINCE CAPTAIN STEVENS WAS NOT AUTHORIZED TO ISSUE ORAL SEARCH AUTHORIZATIONS.

## IV

THE EVIDENCE PRESENTED BY THE GOVERNMENT IS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN A CONVICTION, SINCE IT FAILS TO PROVE THAT THE POSSESSION AND/OR USE OF MARIJUANA WAS NOT "FOR AUTHORIZED MEDICINAL PURPOSES" [ARTICLE

1151, U. S. NAVY REGULATIONS (25 FEBRUARY 1973)].

We do not concur in the assignments of error, and we affirm.

I

■ The marijuana in question and other pertinent evidence was seized from appellant's barracks room during a search ordered by the Regimental Field Officer of the Day, pursuant to authority delegated by Commanding Officer, Recruit Training Regiment, Marine Corps Recruit Depot, San Diego, California. Appellant contends that a commanding officer, by the very nature of his position and his responsibilities for the maintenance of good order and discipline in his command, cannot be a "neutral and detached magistrate" and is *per se* disqualified from authorizing a search. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972); *United States v. United States District Court for Eastern District of Michigan, Southern Division*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Connally v. Georgia*, 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977). Appellant argues that it necessarily follows a delegated subordinate would also be disqualified from authorizing a search.

We are aware that the Court of Military Appeals is apparently planning to reexamine the issue of *per se* disqualification of a commanding officer as a neutral and detached magistrate. *See United States v. Murray, pet. granted* 6 M.J. 129 (C.M.A. 1978); *United States v. Hathaway, pet. granted* 5 M.J. 363 (C.M.A.1978); *United States v. Vietor, pet. granted* 5 M.J. 254 (C.M.A.1978); *United States v. Hood, pet. granted* 4 M.J. 284 (C.M.A.1978). To date, however, any contention of *per se* disqualification has been consistently rejected by the military and civilian courts.

Paragraph 152, *Manual for Courts-Martial, United States, 1969* (Revised edition) establishes the authority of a commanding officer to order searches. Such authority has been recognized for many years. *United States v. Doyle*, 1 U.S.C.M.A. 545, 4 C.M.R. 137 (1952); *United States v. Staggs*, 23 U.S.C.M.A. 111, 48 C.M.R. 672 (1974); *United States v. Grosskreutz*, 5 M.J. 344 (C.M.A.1978). It is correct that the United States Supreme Court and the Court of Military Appeals have emphasized the importance of searches being authorized by a proper magistrate. *See, e. g. Shadwick v. City of Tampa, supra*, and *United States v. Sparks*, 21 U.S.C.M.A. 134, 44 C.M.R. 188 (1971). In the military, however, the commanding officer has been authorized to function as the magistrate. In *United States v. Hartsock*, 15 U.S.C.M.A. 291, 35 C.M.R. 263 (1965), Judge Kilday stated:

> In Federal civilian practice, the issuance of a warrant to search, and other matters attendant thereto, are governed by Rule 41 of the Federal Rules of Criminal Procedure. Therein, certain specifically designated committing magistrates are granted authority to issue warrants. . . . Power to authorize a search is within the province of the commanding officer, including an officer in charge. Paragraph 152, Manual for Courts-Martial, United States 1951. In this context he stands in the same relation vis-a-vis the investigating officer and accused as the Federal magistrate. And we have so equated him. [15 U.S.C.M.A. at 294, 35 C.M.R. at 266].

Recent decisions of the Court have upheld this fundamental proposition. *United States v. Grosskreutz, supra; United States v. Guerette*, 23 U.S.C.M.A. 281, 49 C.M.R. 530 (1975).

On the subject of *per se* disqualification, the Army Court of Military Review in *United States v. Carlisle*, 46 C.M.R. 1250, 1252–3 (A.C.M.R.1973) recently stated:

> . . . . It is difficult to imagine a commander who would not want strictly to preclude drug abuse in his command, and to get to the bottom of any illicit drug traffic. He, like a magistrate who is casually indifferent to muggings on the streets of his jurisdiction, would indeed

be a *rara avis*. Neutrality and not nonchalance is the key. An analogous line of military cases holds that a convening authority is not disqualified from exercising his judicial powers merely because he has deplored crime or has revealed his awareness of problems in his jurisdiction. *United States v. Harrison*, 19 U.S.C.M.A. 179, 41 C.M.R. 179 (1970); *United States v. Hurt*, 9 U.S.C.M.A. 735, 27 C.M.R. 3 (1958); *compare United States v. Shepherd*, 9 U.S.C.M.A. 90, 25 C.M.R. 352 (1958). Commanders have taken an oath to support the Constitution. There is nothing inherent in command which excepts the Fourth Amendment from the scope of that oath. We decline to sweep the position of command within the disqualifying rule of *Coolidge v. New Hampshire, supra.*

On this same subject, the Tenth Circuit in *Wallis v. O'Kier*, 491 F.2d 1323, 1325 (1974), *cert. denied* 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974), has stated:

. . . It has not been shown, and the Court will not assume, that the Commanding Officer of a military installation is to be classified as a prosecutor or a policeman. We think he is neither. He is of the description given him by his title—the Commanding Officer of the personnel within his command and of the property committed to his control. To be sure, he is responsible for the maintenance of order and discipline within his command. This does not mean that he is partial, prejudiced and biased. There is no reason to suppose that he would be less willing than a magistrate that there be a fair and just administration of the law.

As indicated, a commanding officer is responsible for the maintenance of order and discipline within his command, but this does not mean he is necessarily prejudiced and biased. Indeed, rather than being disqualified *per se*, a commanding officer has been presumed to be impartial. *See United States v. Banks*, 539 F.2d 14 (9th Cir. 1976); *United States v. Grisby*, 335 F.2d 652 (4th Cir. 1964). He does not automatically forfeit the necessary neutrality stressed in *Coolidge v. New Hampshire, supra.* His job is not that of a policeman or prosecutor, seeking to ferret out crime or gather evidence for trial. In the military, such responsibilities fall to the military policeman and trial counsel, respectively.

A thorough functional analysis must be applied to ascertain the essence of the Fourth Amendment requirement of a neutral and detached magistrate. The focus of the analysis is on the magistrate's mental processes in his determination of probable cause. The mental processes must be directed toward an independent determination of whether probable cause exists, based on facts of which the magistrate is aware. The requirement is not satisfied by simply labeling some official as a "neutral and detached magistrate," because the label does not guarantee that the requisite mental processes will be utilized by that official. Commanding officers are, however, capable of making independent judgments. Military justice can ensure on an *ad hoc* basis that the commanding officer is utilizing the requisite mental processes by requiring the officer to support his decision by stating the underlying facts and reasoning. Because a commanding officer is capable of utilizing the mental processes required by the Fourth Amendment, the military practice of command-authorized searches is not *per se* unconstitutional. Therefore, the search authorized by the commanding officer's representative, in this case the Regimental Field Officer of the Day, was not *per se* unconstitutional.

## II

■ Appellant asserts that Captain Stevens, the Regimental Field Officer of the Day, was not qualified to authorize a search of appellant's room because he was an active participant in the search and, therefore, could not be a "neutral and detached magistrate."

The record of trial reveals that appellant's roommate had reported the presence of marijuana in the room to a Gunnery Sergeant Anderson, the Battalion Officer of the Day. The roommate was apparently

already on restriction and attempting to avoid further trouble for himself. Gunnery Sergeant Anderson went to the passageway outside the appellant's room, detected the odor of burning marijuana, and reported this fact to Captain Stevens. Assistance was obtained from the Provost Marshal's Office. The group proceeded to the appellant's room. Gunnery Sergeant Anderson knocked on the door. When appellant opened the door, Gunnery Sergeant Anderson indicated he was making the required restriction bedcheck on appellant's roommate. Gunnery Sergeant Anderson entered the room, followed by Captain Stevens and several military policemen. When the group entered, appellant immediately threw a shaving kit containing marijuana on his bunk and stated "this is what you're looking for." Captain Stevens then looked under the pillow on appellant's bunk and found additional marijuana.

We find nothing inconsistent in the actions of Captain Stevens. The information presented to him by Gunnery Sergeant Anderson provided sufficient probable cause to authorize a search. Gunnery Sergeant Anderson and one of the military policemen who was in the group were of the impression that Captain Stevens had authorized the search before they proceeded to appellant's room. (R.36, 57). Captain Stevens indicated that he only issued the authorization as the group entered the room; however, no one else seemed to have heard him. In any event, the point at which authorization was given does not appear critical. Appellant's surrender of the shaving kit is considered to have been voluntary, and the only real search was made by Captain Stevens when he looked under the pillow on appellant's bunk.

At the time that Captain Stevens commenced the search, he had reassumed his role as the Regimental Field Officer of the Day, having already completed his role as a neutral and detached magistrate in determining there was probable cause for a search. Probable cause had been completely established before the group proceeded to appellant's room. Having completed his function as a neutral and detached magis-trate, we find nothing to prevent Captain Stevens from participating in the search.

### III

Appellant also contends that Captain Stevens was not authorized to issue an oral order to search. As indicated previously, we believe the only real search conducted without written authorization was that made by Captain Stevens in looking under appellant's pillow. Nevertheless, we have considered the possibility that knocking on appellant's door and having the door opened could be considered a search to determine the presence of marijuana. We will examine Captain Stevens' oral authorization to search from that perspective.

 Captain Stevens received his delegated authority to order searches by virtue of Regimental Order 1601.6K of 26 July 1976. Reference is made in the Order to use of the "Record of Authorization for Search (MCRD Form 5800/4)" for searches authorized by Battalion Commanders and their representatives in the assigned Battalion area. It is unclear from the Order, however, whether written authorization is required for the designated representatives of the Regimental Commander. Certainly, a written authorization is the recommended and preferable procedure. Written authorization to search, however, is not essential for a valid search in the military. *See* Paragraph 152, the *Manual; United States v. Florence*, 1 U.S.C.M.A. 620, 5 C.M.R. 48 (1952). The real purpose of a written authorization to search is to provide a record of the facts upon which the determination of probable cause was made. In this way, the correctness of the determination can be tested later. In the present case, however, the person who orally authorized the search, Captain Stevens, and the others who participated in the search testified at trial concerning the facts which provided the basis for the determination of probable cause. Appellant had the opportunity at trial to cross-examine and test the correctness of the determination. Under these circumstances, we can find no prejudice to appel-

lant's rights in the fact that Captain Stevens may not have complied completely with the requirements of the Regimental Order.

## IV

■ Appellant was found guilty of use and possession of marijuana in violation of Article 1151, U.S. Navy Regulations, 1973. This particular regulation proscribes, *inter alia*, the use and possession of marijuana "except for authorized medicinal purposes." Appellant argues that the prosecution had the burden, and did not meet it, of proving that his use and possession was not for authorized medicinal purposes. In support of his argument, appellant cites *United States v. Verdi*, 5 M.J. 330 (CMA 1978). In *Verdi*, the accused was charged with violating a regulation that proscribed the wearing of wigs or hairpieces while on duty or in uniform except for cosmetic reasons or to cover natural baldness or physical disfiguration. The accused, Sergeant Verdi, presented some evidence that he had a physical disfiguration. The Government failed to rebut that evidence.

The holding in *Verdi* concerned the instructions on the Government's burden of proof which the military judge was required to give the court members. The Court of Military Appeals cited their opinion in *United States v. Graves*, 1 M.J. 50 (C.M.A.1975), that the military judge has the responsibility for instructing the members on the elements of the offenses raised by the evidence as well as on potential defenses and other questions of law. The Court, in dicta, addressed the subject of the Government's burden of proof regarding exceptions and affirmative defenses. Basically, the Court noted that the Government has the burden of proof to show that an accused does not fall within an exception contained in a statute and that the defense has the initial burden with respect to an affirmative defense which does not appear within the statute defining the criminal act. The Court reviewed an earlier case, *United States v. Gohagen*, 2 U.S.C.M.A. 175, 7

C.M.R. 51 (1953), which held that the burden of proof was on the accused to prove he was within an exception to a regulation, and found this case to be contrary to the Supreme Court holdings in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). We do not interpret *Verdi*, however, to mean that the Government must automatically negative all exceptions set forth in a statute or regulation.

*Verdi* must be read in the context of its facts. The accused in that case presented some evidence that he fell within the exception contained in the regulation. The Government had the burden to prove he did not. Since the Government presented no evidence, it failed to meet its burden. Burden of proof should not be confused with the burden of going forward with some evidence. In the present case, the appellant presented no evidence at trial that he fell within the exception. In the absence of any evidence which reasonably raises the applicability of the regulatory exception, the burden of going forward with evidence to negate the exception does not shift to the prosecution, *United States v. Rose*, 19 U.S. C.M.A. 3, 41 C.M.R. 3 (1969). Therefore the Government has met its burden of proving the appellant's guilt beyond a reasonable doubt. *See United States v. Rizner*, No. 78 1092 (N.C.M.R. 25 January 1979).

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

Senior Judge DUNBAR and Judge GLADIS, concur.