## UNITED STATES
### v.
**Josh MARTIN; III, 262 19 3768, Private First Class (E–2), U. S. Marine Corps.**

### NCM 78 1513.

U. S. Navy Court of Military Review.

Sentence Adjudged 31 March 1978.

Decided 25 April 1979.

---

2. By this, we mean more discussion of the significant conflicting portions of evidence.

LT Christopher C. Henderson, JAGC, USNR, Appellate Defense Counsel.

LCDR Bradley S. Beall, JAGC, USN, Appellate Government Counsel.

Before BAUM, MICHEL and GRANGER, JJ.

MICHEL, Judge:

Contrary to his pleas at a special court-martial before officer and enlisted members, appellant was found guilty of various assault-related offenses occurring within a relatively brief span of time on the evening of 7 January 1978, in violation of Articles 117 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 917 and 928. Appellant's sentence, as it reaches this Court, extends to reduction to pay grade E–1 and a suspended bad-conduct discharge.

During trial on the merits, evidence was adduced by prosecution and defense witnesses concerning appellant's history of protracted alcohol abuse and associated treatment. The defense theory was that, on the evening of the alleged offenses, appellant was either insane or that his acts were the product of his involuntary intoxication. The military judge considered that both defenses were reasonably raised by the evidence and prior to findings instructed the court members, *inter alia,* on both voluntary and involuntary intoxication, as well as insanity. Appellant's assertion here is that certain of these prefindings instructions were erroneous and that, consequently, appellant's substantial rights have been prejudiced. We agree.

Essentially, the facts indicate that appellant and an enlisted companion engaged in a period of beer drinking at one of the base enlisted clubs. At one point, when appellant left briefly to see to his bodily needs, the other Marine, who had gone to the bar to obtain more beer, observed a third party at their table, apparently holding the less-than-empty beer can from which appellant had been drinking. The following events, although unclear in many respects, definitely establish that appellant returned to the table and, in the absence of his companion, finished his can of beer. Subsequent to an abbreviated sojourn into a neighboring Okinawan village, appellant returned to the base where the conduct alleged took place.

Upon being informed of his actions later that evening, appellant claimed that he had been drugged and requested a urinalysis. For reasons not important here, the urinalysis was not performed.

■ The law is clear that in a trial before court members the trial judge has the independent and paramount duty to ensure that all defenses reasonably raised by the evidence are instructed upon so that the triers of fact may fulfill their prescribed function in an informed manner, *United States v. Sawyer,* 4 M.J. 64 (C.M.A. 1977), for such is the essence of a fair trial. *See United States v. Thompson,* 3 M.J. 168 (C.M.A.1977). This duty stems from and is based upon the trial judge's evaluation of that evidence properly before him, which itself frames the issues giving rise to appropriate instructions. *Cf. United States v. Graves,* 1 M.J. 50 (C.M.A.1975). Thus, when an accused presents his version of an incident, and where, as here, there is evidence to support his testimony, he is entitled to appropriate instructions, for the credibility of the evidence is a matter for the sole determination of the triers of fact who cannot conceivably carry out their inherent function properly without lucid legal guideposts. *See United States v. Head,* 6 M.J. 840 (N.C.M.R.1979).

According to appellant's testimony, he was an alcoholic for whom rehabilitative treatment and counseling failed to provide positive results. He recounted past alcoholic episodes wholly divorced from memory but substantiated by numerous observers. At least one such episode involved delusions giving rise to overtly antisocial conduct. Appellant characterized this event as a "seizure." The defense produced additional testimony which, if believed, would substantiate that long term alcoholics could, and sometimes do, suffer from lapses of memory concerning various events irrespective of the amount of their alcoholic ingestion at those precise times. Trial defense counsel sought to bolster this position

by the production of testimony which, if believed, would raise the inference that the third party who apparently had tampered with appellant's drink actually added some substance which affected appellant's behavior.

■ We recognize that irrational actions resulting from naught save mere drunkenness do not place an individual's mental responsibility in issue. *United States v. Lewis,* 14 U.S.C.M.A. 79, 33 C.M.R. 291 (1963). So, too, alcoholic amnesia in and of itself is not a mental disease, defect, or derangement which will excuse the commission of a crime. Rather, there must be a showing that alcoholism or the consistent use of alcohol has so affected the mind of the person asserting the defense, by impairment of his mental faculties, that his conduct is deemed lawfully excusable. *United States v. Marriott,* 4 U.S.C.M.A. 390, 15 C.M.R. 390 (1954). The impairment must be such as to preclude the individual's substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. *United States v. Frederick,* 3 M.J. 230 (C.M.A. 1977). This is the rule which must be applied where *delirium tremens* is proffered as a defense. Paragraph 154a (3), *Manual for Courts-Martial, United States, 1969* (Revised edition).[1]

■ If the military judge determines the issue of mental responsibility to have been raised by the facts in evidence, *see United States v. Mathis,* 15 U.S.C.M.A. 130, 35 C.M.R. 102 (1964), his determination will be upheld upon review by this Court in the absence of an abuse of his discretion, i. e. unless reasonable minds would conclude that as a matter of law the defense was not raised or that the defense-related instruction was erroneously given over timely objection by opposing counsel. *Cf. United States v. Morphis,* 7 U.S.C.M.A. 748, 23 C.M.R. 212 (1957). Neither of these two predicates appear of record here. That, however, does not end the matter.

---

1. This portion of the *Manual,* like Chapter XXIV thereof, must be read in light of *Frederick, supra.*

In his prefindings instructions to the members of the court, the military judge advised in pertinent part:

MJ: Now the issue of mental responsibility, at the time of the offense has been raised in this case by virtue of the accused's testimony with regard to his condition at the time of the offense. With regard to having possibly been, felt like he was, in a seizure. That's enough to at least raise the possibility of his mental responsibility or lack thereof at the time of the offense. You're advised that the issue of insanity at the time of the offense may have been fairly raised by the evidence which (sic) respect to, in this case, all the offenses, having raised, since all the acts took place at the same time and place. It's raised as to all of them. In determining this issue you must consider all the relevant facts and circumstances surrounding the entire course of events from the time that the accused first allegedly entered the barracks until the time that he was put to bed.

Now, insanity at the time of the alleged offense is a complete defense to all the charges and specifications here. In other words, if you find that the accused was insane at the time of the evening on the 7th of January that would be a complete defense to everything he is charged with. Therefore, you're advised that, unless you're satisfied beyond a reasonable doubt, that the accused was mentally responsible at the time of the commission of the offenses charged, the accused cannot legally be convicted of that offense. A person is not mentally responsible in the criminal sense if he was, at the time, conducting himself in a manner that was the product of mental disease or defect, *or if at the time of the alleged offense he lacked substantial capacity to appreciate the wrongfulness of his conduct and to adhere to the right conduct.*

The phrase mental disease comprehends those irrational states of mind which are a result of deteriorizations (sic), destruction, or malfunction, of the mental, as distinguished from the moral factors. It constitutes a lack of mental responsibility. The impairment must not be only the result of mental disease *but must also completely deprive the accused of this ability to distinguish right from wrong and adhere to the right. The ability to distinguish right from wrong,* to the acts charged, is a realistic not an abstract concept. The question is whether the accused knew that the particular acts for which he was charged were wrong in the sense that the military or the society in general, considers those acts to be wrong. *Even though the accused may have been able to distinguish right from wrong as to the acts charged, he's nevertheless not mentally responsible if because of some mental disease he was unable to adhere to the right as to the acts charged. Now the inability to adhere to the right does not exist as to the acts charged, unless the accused is the product (sic) of power of his choice or volition. A mere defect in character, or willpower, or behavior, does not necessarily indicate a lack of mental responsibility, even though it may demonstrate a diminution or impairment of the ability to adhere to the right.* Those are very large words. I'm saying that a mere manisfestation (sic) of behavior, that may appear to be rather strange, *does not mean that the accused has lost his ability to determine right or wrong or adhere to the right.* (R. 174–175, emphasis added).

■ From our vantage point, we think this instruction was erroneous *per se.* Scrutiny discloses that in effect the military judge melded the *M'Naghten*[2] insanity standard, repudiated in *Frederick, supra,* with the proper standard to be utilized in trial by courts-martial.[3] This clearly placed before the fact-finders a misleading standard against which to measure appellant's mental state at the time of the alleged offenses and resulted in substantial preju-

**2.** *M'Naghten's Case,* 10 Cl.&F. 200, 8 Eng.Rep. 718 (H.L.1843).

**3.** *See* American Law Institute, Model Penal Code § 4.01, Proposed Official Draft (May 4, 1962).

dice to him. *See United States v. Jensen,* 14 U.S.C.M.A. 353, 34 C.M.R. 133 (1964).

Further, when the military judge instructed on involuntary intoxication, he injected similar error into the record. While properly distinguishing between the legal effect of voluntary and involuntary intoxication, with regard to the latter that jurist announced that:

> Involuntary intoxication . . . is a complete defense. If you should find from the evidence that the accused was, in fact, drugged by this unknown person who may or may not have put something in his beer, and if you find that as a result of this asserted drug intake, *that he was unable to determine right from wrong, and that he was unable to adhere to the right* because of his drugged state, then you may vote to acquit the accused on all charges and specifications.

(R. 177, emphasis added). In so doing, the military judge made it plain that to exculpate the appellant, the court members would have to find both that his intoxication was involuntary and that the mental condition thus produced in appellant equated with the prevailing legal standard of insanity. Although this was a correct statement of law, *see* Annot., 73 A.L.R.3d 195 (1976); 22 C.J.S. *Criminal Law* § 69 (1961); 21 Am.Jur.2d *Criminal Law* § 108 (1965); *cf. Perkins v. United States,* 228 F. 408 (4th Cir. 1915); *United States v. Craig,* 3 C.M.R. 304, 311 (A.B.R.1952), as can readily be seen, the wrong standard of insanity was verbalized, again to the prejudice of appellant's substantial rights.

Accordingly, the findings and sentence are set aside. A rehearing may be ordered.

Senior Judge BAUM and Judge GRANGER concur.