**UNITED STATES**

v.

**Jesse M. COWAN, 565–79–9014 Seaman Apprentice (E–2), U.S. Navy.**

**NMCM 91 01767.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 8 March 1991.

Decided 31 March 1994.

---

LT David P. Sheldon, JAGC, USNR, Appellate Defense Counsel.

LT Dwight N. Mersereau, JAGC, USNR, Appellate Government Counsel.

Capt Brett D. Barkey, USMCR, Appellate Government Counsel.

Before REED, LAWRENCE and DeCICCO, JJ.

DeCICCO, Judge:

Appellant was charged with the unpremeditated murder of another sailor in violation of Article 118, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 918. Contrary to his pleas, a general court-martial composed of officer members convicted him of the lesser included offense of involuntary manslaughter in violation of Article 119, UCMJ, 10 U.S.C. § 919 and sentenced him to a dishonorable discharge, confinement for 3 years, reduction to pay grade E-1 and forfeiture of $753.90 pay per month for 24 months.[1] The convening authority approved the sentence as adjudged. Upon initial review before this Court, appellant assigned a single error.[2] We subsequently specified additional issues.[3]

---

1. We have noted that the adjudged amount of forfeitures of pay was not stated in whole dollars as required by Rule for Courts–Martial 1003(b)(2), and this was not addressed in the convening authority's action. We will correct this error in our decretal paragraph.

2. THE GOVERNMENT FAILED TO PROVE APPELLANT'S GUILT BEYOND A REASONABLE DOUBT TO THE LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER.

3. I. ASSUMING THAT THE INTENTIONAL OMISSION TO RENDER ASSISTANCE MAY HAVE BEEN RELEVANT TO SHOW THE ACCUSED'S INTENT TO INFLICT GREAT BODILY HARM UNDER THE CHARGED OFFENSE OF MURDER, WHAT DUTY TO ACT LAY UNDER THE FOUND LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER ACCOMPLISHED THROUGH CULPABLE NEGLIGENCE?

After consideration of the briefs and oral argument of the parties,[4] we are satisfied beyond a reasonable doubt of appellant's guilt of involuntary manslaughter. The evidence clearly established that appellant stabbed his victim, that this stabbing constituted culpable negligence under the facts of this case, and the stabbing was the proximate cause of the victim's death. We do not reach the question of whether appellant's failure to obtain timely assistance constitutes an independent basis upon which a finding of involuntary manslaughter may rest because the stabbing alone is sufficient to support the conviction. In light of these determinations, we affirm that portion of the specification regarding the stabbing as well as the sentence as modified herein.

*Facts*

The facts in this case are bizarre. On the date of the incident, appellant, Fireman Hernandez (the victim) and Petty Officer Armas were drinking heavily at an area near their barracks at Naval Station, Guam. When they had finished drinking, Hernandez and Armas returned to their respective rooms and went to sleep. Hernandez was very intoxicated. Appellant returned to his room with Seaman Recruit Harp. Appellant's room and Hernandez' room adjoined one another and were connected by a common restroom.

A short time later, appellant went to Hernandez' room to check on him but was unable to wake him. Appellant then obtained the help of Armas and a Petty Officer Johnson in attempting to wake Hernandez, but they were unsuccessful. Appellant became upset and told Harp that he did not like drunks.

Harp testified that appellant was left alone in the room with Hernandez for a few minutes. She saw him leave the room, drink a shot of tequila and return to Hernandez' room for another 3 or 4 minutes. During this time, Harp received an intercom call for the appellant. When she entered Hernandez' room to tell appellant about his call, she testified that appellant had the look of "a kid being caught in a candy jar" and that "[h]is eyes were big on Hernandez' bed." Record at 207. She saw appellant sitting on the bed next to Hernandez. Appellant then left, smoked a cigarette and returned the call. After he returned to Hernandez' room, he immediately rushed out and called for an ambulance. No other persons besides the appellant were seen entering or exiting Hernandez' room after Armas and Johnson left.

Hernandez was lying on his bed in his blood that had soaked through the mattress and had formed a puddle on the floor under the bed. Within minutes of appellant's call, emergency medical personnel responded and rushed Hernandez to the nearby clinic. All possible emergency life-saving measures were taken, but Hernandez was pronounced dead approximately a half hour after arrival at the clinic. The cause of death was exsanguination.

As strange as it may seem, examination of the body disclosed several long superficial wounds on his chest. The scratches on the body were long and uniform. According to expert testimony, they were inflicted by dragging a razor or sharp knife on the skin. There were also shallow puncture wounds as if poked with the point of a sharp knife on his torso, arm and leg. The lethal wound was a cut in the thigh about one and a half inches

II. DOES THAT PORTION OF THE SPECIFICATION OF CHARGE I ALLEGING THAT APPELLANT "WRONGFULLY, INTENTIONALLY, OMITT[ED] TO RENDER TIMELY ASSISTANCE AFTER [THE VICTIM] HAD BEEN STABBED, THEN WELL KNOWING THAT [THE VICTIM] WAS IN IMMEDIATE PERIL OF BLEEDING TO DEATH AND WAS UNABLE TO HELP HIMSELF, WHICH ASSISTANCE UNDER THE CIRCUMSTANCES HE WAS REQUIRED TO PROVIDE" ALLEGE A LAWFUL BASIS UPON WHICH A FINDING OF INVOLUNTARY MANSLAUGHTER MAY REST?

III. IF IT DOES, DOES THE SPECIFICATION AS EXCEPTED BY THE MEMBERS, DELETING THE INTENTIONAL ASPECT OF THAT ACT, PROVIDE A BASIS IN LAW FOR A FINDING OF GUILTY OF INVOLUNTARY MANSLAUGHTER?

IV. IF NO DUTY TO ACT EXISTS, IS THE LANGUAGE MERE SURPLUSAGE THAT MAY BE DELETED WITHOUT AFFECTING THE FINDING, OR MUST THE ENTIRE FINDING BE SET ASIDE?

4. We would like to commend appellate counsel for both sides for the excellent quality of the briefs and oral arguments submitted in this case.

deep that punctured the femoral artery and vein. A pathologist opined that the wounds could not have been self-inflicted and that the manner of death was homicide. Other expert testimony revealed that it would have taken as long as 10–30 minutes or as little as 5–10 minutes for Hernandez to bleed to death following the injury to his blood vessels. Given the nature of his injury, without immediate application of a tourniquet, his death was virtually certain. Had the blood vessels not been injured, he would have had an excellent chance of recovery.

Harp also testified that Hernandez had previously given appellant a diving knife. This knife was later found in a dresser drawer of appellant's roommate and had been wiped off. Laboratory analysis was able to identify blood on it, but not the blood type.

Appellant and Hernandez had been good friends. Shortly after the incident, appellant became so despondent over Hernandez' death that he was referred to a psychiatrist for counselling. The psychiatrist testified that he spoke with appellant the day after the incident. Appellant told him that when he re-entered Hernandez' room, he found Hernandez with a knife in his thigh. Appellant said he removed the knife and applied a towel to compress the wound. The medical personnel who responded to the emergency call found a towel on Hernandez' leg but it had no blood on it, leading them to conclude that it was placed there after Hernandez had stopped bleeding.

At trial, appellant was arraigned on a charge of unpremeditated murder. The specification read:

In that Seaman Apprentice Jesse Mark Cowan, U.S. Navy, U.S. Naval Station, on active duty, did, on board U.S. Naval Station, Guam at Barracks 13, Room 101, on or about 16 December 1990, with intent to inflict great bodily harm, unlawfully murder HTFN James R. Hernandez by means of stabbing him with a knife, and by wrongfully, intentionally, omitting to render timely assistance after said HTFN Hernandez had been stabbed, then well knowing that said HTFN Hernandez was

in immediate peril of bleeding to death and was unable to help himself, which assistance under the circumstances he was required to provide.

After all of the evidence was submitted to the members, the military judge discussed proposed instructions with counsel. He referred to an 802 conference [5] in which they had discussed whether he would instruct the members that they had to find both the act of stabbing and the failure to render timely assistance in order to convict the appellant of unpremeditated murder or a lesser included offense, or whether a finding of only one or the other would suffice for a conviction. During an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, the military judge said, "[I]n my opinion it does not have to be both. They could find the accused guilty of the charge or a lesser offense by accepting [sic] either the act or the failure to act." Record at 339. He again proposed a similar instruction at a later session. Record at 355. Counsel never objected to the proposed instructions.

When he instructed the members regarding the charged and lesser included offenses, the military judge mentioned both the act of stabbing and the failure to render timely assistance, but the instructions were confusing and at times contradictory. At certain points, he instructed them that they had to find the stabbing *and* the failure to render timely assistance in order to convict (Record at 383, 384–85, 386, 387, and 388). At other times, he instructed them that they only had to find the stabbing *or* the failure to render timely assistance in order to convict (Record at 386, 388, 393, and 397). At page 393 of the record, he stated:

Now, you will note that the accused is charged with both an action and a failure to act. However, you need not be convinced beyond a reasonable doubt of both the alleged action and the alleged failure to act, in order to find the accused guilty of any offense. However, you must be convinced beyond a reasonable doubt of all the elements with respect to the alleged action or the alleged failure to act. If you are convinced beyond a reasonable doubt of

5. An out-of-court conference conducted pursuant to Rule 802 of the Rules for Courts–Martial.

the accused [sic] guilt but, you are not convinced beyond a reasonable doubt as to either the alleged act or the alleged failure to act, you must except out the portion of the specification to which there is reasonable doubt.

When the military judge gave the findings worksheet to the President of the court, he again stated, by way of example, that the act of·stabbing could be excepted from the specification with the court still returning a guilty verdict to the charge. Record at 396–97. The members then retired to the deliberation room. Not surprisingly, they returned with questions. The President requested another explanation of the worksheet and the military judge again told him that they could find either the stabbing or the failure to assist as a basis for a guilty finding to the charged offense of murder or the lesser offenses of involuntary manslaughter and negligent homicide. Record at 409.

When the members returned with their initial findings, but before the findings were announced, the military judge asked to see the worksheet. He noticed a problem. The members had highlighted the language on the worksheet "GUILTY OF INVOLUNTARY MANSLAUGHTER" and excepted the words "great" and "intentionally" from the specification but did not except the word "murder." Obviously, this defect required correction. The military judge called for a recess and drafted a new specification which is contained in appellate exhibit XXXIII. It alleged the offense of involuntary manslaughter and read:

In that Seaman Apprentice Jesse Mark Cowan, U.S. Navy, U.S. Naval Station, on active duty, did, on board U.S. Naval Station, Guam, at Barracks 13, Room 101, on or about 16 December 1990, by culpable negligence, unlawfully kill HTFN James R. Hernandez by means of stabbing him with a knife, and by wrongfully, intentionally, omitting to render timely assistance after said HTFN Hernandez had been stabbed, then well knowing that said HTFN Hernandez was in immediate peril of bleeding to death and was unable ·to help himself, which assistance under the circumstances he was required to provide.

■ He told the .members that he had drafted a specification according to what he believed were the intended findings of the court. He asked the members to deliberate and vote again. on the revised specification. The President had no questions, and the military judge did not show the rewritten specification to counsel. Shortly thereafter, the· members returned again, and the military judge stated that he realized that he had included a word in the specification that should not have been there (the word "intentionally") and asked the President to line through it and initial it. The President stated ·that the corrected specification on appellate exhibit XXXIII then reflected the finding of the court, but he asked if the members could retire one more time to talk it over. Record at 419. A. few minutes later, they returned with their findings of guilty to the revised specification of involuntary manslaughter except for the word "intentionally." [6]

## Discussion

Article 119(b), UCMJ, provides:

Any person subject to this chapter who, without an intent to kill or inflict great bodily harm, unlawfully kills a human being—

(1) by culpable negligence; or

(2) while perpetrating or attempting to perpetrate an offense, other than those named in clause (4) of section 918 of this title (article 118), directly affecting the person; is guilty of involuntary manslaughter and shall be punished as a court-martial may direct.

■ The Manual for Courts–Martial (M.C.M.), United States, 1984, lists the fol-

6. In light of the contents of the findings worksheet (appellate exhibit XXVI), the military judge was clearly required to take corrective action. While we do not find prejudicial error in the procedure used by the military judge, we believe the preferred practice is to hold an out-of-court session with counsel to discuss the matter and to secure suggestions and agreement on the advice to be given to the members or action to be taken. *See* Department of the Army Pamphlet 27–9, Military Judges' Benchbook (1982), paragraph 2–32.

lowing elements for involuntary manslaughter:

(i) that a certain named or described person is dead;

(ii) that the death resulted from the act or omission of the accused;

(iii) that the killing was unlawful; and

(iv) that this act or omission of the accused constituted culpable negligence, or occurred while the accused was perpetrating or attempting to perpetrate an offense directly affecting the person other than burglary, sodomy, rape, robbery, or aggravated arson.

M.C.M., ¶ 44b(2). Culpable negligence is defined as "a degree of carelessness greater than simple negligence. It is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission." M.C.M., ¶ 44c(2)(a). It is a reckless or wanton act, showing a disregard of human safety. *United States v. Riggleman*, 1 C.M.A. 336, 3 C.M.R. 70, 1952 WL 1835 (1952). The actor need not actually intend or foresee those consequences. It is only necessary that a reasonable person in such circumstances would have realized the substantial and unjustified danger created by his act. *United States v. Baker*, 24 M.J. 354 (C.M.A.1987).

▇▇▇ It is also clearly established that a military judge is required to clearly and accurately instruct the court members as to the law. *United States v. Harper*, 22 M.J. 157 (C.M.A.1986); *United States v. Graves*, 1 M.J. 50 (C.M.A.1975). The instructions should be consistent and fit the circumstances of the charged offense, *United States v. Groce*, 3 M.J. 369 (C.M.A.1977); *United States v. Harrison*, 19 C.M.A. 179, 41 C.M.R. 179, 1970 WL 7300 (1970), and they should act as lucid legal guideposts and clear standards to guide the members in their deliberations. *United States v. McGee*, 1 M.J. 193 (C.M.A.1975); *United States v. Clark*, 1 C.M.A. 201, 2 C.M.R. 107, 1952 WL 1702 (1952); *United States v. Martin*, 7 M.J. 613 (N.C.M.R.1979). And, in the case of erroneous instructions, consideration must be given to their effect on the members. *United States v. Cauley*, 12 M.J. 484 (C.M.A.1982).

▇▇▇ The instructions in this case, while not a model of clarity, on the whole were not so deficient or erroneous so as to materially prejudice the substantial rights of the appellant and deprive him of a fair trial. Article 59(a), UCMJ, 10 U.S.C. § 859(a). We find that even though there were inconsistencies as to whether the members had to find either the stabbing or the failure to act, or both of them to convict the appellant, and these inconsistencies created confusion and delay, their legal effect was insignificant because the Government unquestionably proved that appellant stabbed Hernandez, and an instruction that they had to find both would not operate to the appellant's detriment.

▇▇▇ In this case, the members found beyond a reasonable doubt both an act and an omission in that appellant both stabbed and failed to render timely assistance to Hernandez. But in finding him guilty of involuntary manslaughter and excepting the words "great" and "intentionally" and eventually substituting "kill" for "murder" they were not convinced that in stabbing Hernandez appellant intended to kill him or inflict great bodily injury. Their finding is consistent with a finding of culpable negligence in appellant's reckless and wanton conduct that showed a disregard of human safety in scratching and stabbing his drunken friend with a sharp knife that eventually resulted in death. It is beyond cavil that repeated and random cutting and stabbing of an unconscious victim can foreseeably result in life-threatening injuries. Hence, we too are satisfied in law and fact of the sufficiency of the evidence that appellant stabbed Hernandez and that such an act constituted culpable negligence under the circumstances. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

The remaining language in the specification regarding the failure to render timely assistance appeared to have been originally included in the specification in an effort to attempt to prove appellant's intent to kill or inflict great bodily harm. This intent was required for a conviction of unpremeditated murder under Article 118, UCMJ. However, when the members returned a guilty finding to the lesser offense of involuntary man-

slaughter and excepted the words "great" and "intentionally," they clearly found that appellant caused Hernandez' death by culpable negligence and the prosecution failed to establish the intent necessary for a murder conviction. A finding that the culpable negligence consisted of the act of stabbing alone is sufficient to support this conviction, and the remaining language regarding the failure to obtain timely assistance, which was originally meant to prove the intent for murder, became superfluous. We therefore find it to be surplusage and will set it aside.

We do not believe that our decision in setting aside that portion of the specification relating to the failure to act requires us to completely set aside appellant's conviction. As stated above, the stabbing was proved beyond a reasonable doubt, was a culpably negligent act that killed the victim, and, in our view, may support the conviction alone. Appellant's reliance on *United States v. Berg,* 31 M.J. 38 (C.M.A.1990) is misplaced. In *Berg,* the accused was convicted of unpremeditated murder for shooting his girlfriend with a pistol while the two were alone in their apartment. When he instructed the members, the military judge submitted two theories for their consideration: (1) the accused intended to kill or inflict grievous bodily harm under Article 118(2), and (2) the accused's conduct was so inherently dangerous to others in firing a weapon in an apartment building that it showed a wanton disregard for human life under Article 118(3). The evidence at trial indicated that only one person, the victim, was present in the area of the shooting. The Court held in both its initial opinion and again on reconsideration that conduct inherently dangerous to others had to be directed at more than one person and did not apply to situations where an accused's attention was focused on only one individual. Because there was no evidence that anyone else was endangered, the Court found as a matter of law that the evidence did not support this theory. In that the two theories submitted to the members were inconsistent and the members returned a general guilty verdict, the Court could not be sure that the members were not basing their finding on the legally inapplicable theory and

therefore affirmed this Court's setting aside of the findings and sentence.

In this case, we are not faced with a situation in which two inconsistent theories were given to the members that resulted in a general verdict. The military judge instructed them on finding the stabbing and the failure to act beyond a reasonable doubt and to except one or the other if they were not so convinced. They found both. The theories for culpable negligence were not inconsistent but rather were *cumulative.* Even without the failure to act as a basis for the conviction, the members concluded beyond a reasonable doubt that appellant stabbed Hernandez and that act amounted to culpable negligence, and we agree with that finding. Therefore, that portion of the specification that relates to the failure to act that was unnecessary for a guilty finding of involuntary manslaughter can therefore be excepted and the remainder of the specification affirmed. Under the circumstances in *Berg,* no part of the specification could have been excised and the Court could not discern the theory for the conviction. Here, the specification is easily severable and the basis for conviction is crystal clear.

### Conclusion

Accordingly, only so much of the finding is affirmed as includes that appellant by culpable negligence did unlawfully kill HTFN Hernandez by means of stabbing him with a knife in violation of Article 119, UCMJ. The remaining language is set aside and dismissed. Only so much of the sentence as includes a dishonorable discharge, confinement for 3 years, reduction to pay grade E–1, and forfeiture of $753.00 pay per month for 24 months is affirmed.

Senior Judge REED concurs.

LAWRENCE, Judge (dissenting):

The majority correctly characterize the findings instructions as confusing and contradictory. The specification of which appellant was ultimately convicted clearly alleges that the killing was by culpable negligence by means of stabbing the victim *and* thereafter failing to render assistance to him. Appel-

lant and the victim were friends. There was no convincing evidence that appellant intended to kill the victim or inflict serious bodily harm. Understandably, the prosecution could not prove the exact manner by which the stabbing occurred. Due to these ambiguities, there is a real possibility that one or more of the members focused on appellant's failure to render assistance as a basis for conviction. Taken as a whole, the instructions result in a real possibility that one or more members found culpable negligence in the *combination* of the act of stabbing and the failure to act by not rendering assistance to the victim thereafter.

This conclusion leads me to find prejudicial error based on the inadequacy of the instructions regarding appellant's alleged duty to render assistance.[7] In general, a person is under no duty to assist another who is in peril. A duty to act may, however, be established by (1) statute or regulation, (2) a relationship between the parties such a parent-child, employer-employee, or lifeguard-drowning swimmer, (3) undertaking to render aid to a person even though the actor has no legal duty to do so, or (4) wrongfully placing another person in peril, arguably a rationale that applies in this case. Whether' the duty existed, whether it was breached, and whether the breach was the cause of death are questions to be decided by the court members upon meaningful, comprehensible instructions that focus their deliberations on the essential, defined issues.

To illustrate why the instructions in this case are deficient, I suggest what those instructions should include. First, an adequate instruction would provide a clear standard for the members in determining whether they are convinced beyond a reasonable doubt that the accused was under such a duty. *See Jones v. United States*, 308 F.2d 307 (D.C.Cir.1962). Second, the instruction would require that the accused have had

knowledge of the circumstances which required his performance if he is to be convicted for a failure to act. *See e.g.* Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* 207–08 (2d ed. 1986) [hereinafter LaFave & Scott]; Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 667–68 (3d ed. 1982) [hereinafter Perkins & Boyce]; *cf. Fabritz v. Traurig*, 583 F.2d 697 (4th Cir.1978), *cert. denied*, 443 U.S. 915, 99 S.Ct. 3106, 61 L.Ed.2d 879 (1979). In this case, it is unclear whether appellant recognized the serious nature of the wound immediately after he stabbed the victim or perhaps only became aware minutes later when he returned to the victim and saw the amount of blood that had been lost. Third, the instruction would require the members to find beyond a reasonable doubt that the duty was breached by the accused. A failure to act due to ordinary negligence is insufficient to support a conviction for manslaughter, thus the instruction would make clear what intent is required to support a conviction. *See e.g.* LaFave & Scott at 210–11; Perkins & Boyce at 670–71. Fourth, the instruction would require that the members find beyond a reasonable doubt that the nonperformance was the actual and proximate cause of the death. Some courts have held that the accused must be acquitted unless the prosecution establishes beyond a reasonable doubt that the victim would have lived had the accused rendered prompt assistance. *See* LaFave & Scott at 210; Perkins & Boyce at 670. This element is important in this case because expert testimony indicated that the victim may have bled to death in as little as 5 minutes due to the dramatic blood loss from the severed femoral artery. It is therefore unclear whether an earlier call for an ambulance would have saved him.

The instructions given provide no lucid guideposts or clear standards to permit the members to intelligently decide whether ap-

---

7. The majority opine that the failure to render assistance language had been included to prove an intent to kill or inflict great bodily harm. They are probably correct. When the involuntary manslaughter instruction was finally presented to the members, this language should have been deleted for two reasons. First, if appellant was culpably negligent in stabbing the victim, he would be guilty of manslaughter with-

out regard to the alleged failure to render assistance. There was no legal reason for including the language at that point in the trial. Second, the subject of founding homicide on a negative act, that is, a failure to act, is complex and still unsettled. A trial judge generally should avoid an issue that may result in prejudicial error when, as in this case, it can be easily avoided.

pellant's failure to act amounted to culpable negligence or legally could be considered as a factor in deciding whether he was culpably negligent. This omission constitutes prejudicial error that I cannot find to be harmless, therefore, I would set aside the findings and sentence and authorize a rehearing.